DIANNA LYNN PUCKETT, Guardian of the Estate of Charles T. Puckett, a Disabled Person, Plaintiff-Appellant, v. MR. LUCKY'S LTD., Defendant-Appellee.

Fourth District   No. 4—87—0806

Opinion filed October 13, 1988.

KNECHT, J., dissenting.

James E. Zachry, of Burger, Fombelle, Baxter, Zachry & Rathbun, P.C., of Decatur, for appellant.

Heyl, Royster, Voelker & Allen, of Springfield, for appellee.

JUSTICE LUND delivered the opinion of the court:

The plaintiff guardian brought an action in the circuit court of Macon County against the defendant tavern alleging defendant negligently hired an unfit person to sell liquor. Defendant's employee sold liquor to a minor who then operated an automobile while intoxicated and injured plaintiff's ward. The trial court granted defendant's motion to dismiss plaintiff's complaint for failure to state a cause of action. Plaintiff appeals. We affirm.

Plaintiff Dianna Lynn Puckett is guardian of the estate of Charles T. Puckett (Charles, Jr.), a minor and disabled person. On April 14, 1987, plaintiff filed a complaint against defendant, Mr. Lucky's Ltd., alleging defendant negligently hired Charles William Puckett (Charles, Sr.) to sell liquor at defendant's tavern-liquor store. The complaint contained the following allegations.

Charles, Sr., is the father of Charles, Jr. Charles, Sr., formerly operated a package liquor store known as the Library Lounge and had on many occasions been known to sell, and had been convicted of selling, alcoholic beverages to minors.

On April 17, 1987, in the City of Decatur, Illinois, Charles, Jr., was a passenger in an automobile also occupied by Timothy Banks and driven by Bryon Martin. Charles, Sr., while acting as defendant's agent, sold or gave beer to the three minors. The trio consumed beer and Martin, while intoxicated, drove the automobile at a speed of 85

to 100 miles per hour and hit a tree. Charles, Jr., was injured.

Defendant filed a motion to dismiss plaintiff's complaint for failure to state a cause of action. Defendant argued there is no common law right to recover against a tavern for giving away or selling intoxicating liquor. The sole remedy is in the Illinois Dramshop Act (Act) (Ill. Rev. Stat., 1986 Supp., ch. 43, par. 135).

Plaintiff filed a motion requesting the court to take judicial notice of State records containing the statistics on alcohol-related fatal accidents and the consequences of raising the legal minimum drinking age in Illinois.

The trial court refused to take notice of the State records, granted defendant's motion, and dismissed plaintiff's complaint with prejudice.

On appeal, plaintiff concedes Illinois does not recognize actions grounded in common law negligence against liquor providers and the Act provides the sole remedy to third persons injured by intoxicated persons. However, plaintiff argues the lack of common law precedent for dramshop liability has needlessly paralyzed the Illinois courts. Plaintiff urges this court to carve out an exception to the common law rule of nonliability so that a dramshop is potentially liable if it sells liquor to a minor who, as a result of his intoxication, causes injury to a third party.

We recognize that there may well be validity to the position of the plaintiff. It may be that statistics justify making all those who furnish alcoholic beverages to minors financially responsible for the injuries resulting from the alcohol use. However, we feel bound by the decisions of our supreme court which have long limited liability relating to furnishing alcohol to the coverage of the Illinois Dramshop Act. *Cunningham v. Brown* (1961), 22 Ill. 2d 23, 28-29, 174 N.E.2d 153, 157; see also *Hopkins v. Powers* (1986), 113 Ill. 2d 206, 497 N.E.2d 757; *Wimmer v. Koenigseder* (1985), 108 Ill. 2d 435, 484 N.E.2d 1088; *Demchuk v. Duplancich* (1982), 92 Ill. 2d 1, 440 N.E.2d 112; *Graham v. General U. S. Grant Post No. 2665* (1969), 43 Ill. 2d 1, 248 N.E.2d 657; *Ruth v. Benvenutti* (1983), 114 Ill. App. 3d 404, 449 N.E.2d 209; *Gora v. 7-11 Food Stores* (1982), 109 Ill. App. 3d 109, 440 N.E.2d 279.

In *Miller v. Moran* (1981), 96 Ill. App. 3d 596, 598, 421 N.E.2d 1046, 1049, our court refused to create a common law cause of action against a social host who wilfully and wantonly served liquor to a guest, holding the Dramshop Act was the exclusive source of liability.

We are requested to change the law, but we find that such a decision is best left to the supreme court or the legislature. A supreme court decision would be binding upon all of the State, not just the 30

counties of the Fourth Judicial District. Needless to say, the possible conflicts among the appellate districts on this particular subject could lead to a certain amount of economic and social havoc. The decision of the circuit court of Macon County is affirmed.

Affirmed.

GREEN, P.J., concurs.

JUSTICE KNECHT, dissenting:
The majority believes the change requested by plaintiff should be left to the supreme court or the legislature. Their respect for precedent and the role of an intermediate court of review is understandable, but I respectfully disagree with their conclusion.

The landmark Illinois Supreme Court decision of *Cunningham v. Brown* (1961), 22 Ill. 2d 23, 174 N.E.2d 153, followed the common law precedent which declared the seller of alcohol exempt from liability for damages to a third party caused by intoxication. The *Cunningham* court refused to recognize a common law remedy when the legislature had already provided a statutory remedy grounded in strict liability. (Ill. Rev. Stat. 1957, ch. 43, par. 135.) Thus, since *Cunningham* was decided in 1961, the dramshop act has been the exclusive remedy under the Liquor Control Act of 1934 (Liquor Control Act) (Ill. Rev. Stat. 1987, ch. 43, par. 93.9 *et seq.*) available to victims of drunk drivers. *Hopkins v. Powers* (1986), 113 Ill. 2d 206, 497 N.E.2d 757; *Wimmer v. Koenigseder* (1985), 108 Ill. 2d 435, 484 N.E.2d 1088; *Demchuk v. Duplancich* (1982), 92 Ill. 2d 1, 440 N.E.2d 112; *Graham v. General U. S. Grant Post No. 2665* (1969), 43 Ill. 2d 1, 248 N.E.2d 657; *Ruth v. Benvenutti* (1983), 114 Ill. App. 3d 404, 449 N.E.2d 209; *Gora v. 7-11 Food Stores* (1982), 109 Ill. App. 3d 109, 440 N.E.2d 279.

None of the supreme court decisions, including *Cunningham*, have considered the possibility of carving out a limited exception to the common law rule when a third party is injured because alcohol was sold to a minor. Plaintiff's petition alleged her ward was injured in an automobile accident because defendant negligently hired an employee who sold liquor to a minor. Whether the petition was properly dismissed for failure to state a cause of action depends on whether we recognize the limited exception.

The Illinois Supreme Court initiated the evolution of the common law when it recognized contribution among joint tortfeasors (*Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1, 374 N.E.2d 437, *cert. denied sub nom. Hinckley Plastic, Inc. v. Reed-*

*Prentice Division Package Machinery Co.* (1978), 436 U.S. 946, 56 L. Ed. 2d 787, 98 S. Ct. 2849) and when it replaced the doctrine of contributory negligence with that of pure comparative negligence. (*Alvis v. Ribar* (1981), 85 Ill. 2d 1, 421 N.E.2d 886.) In *Alvis* the court held:

> "We believe that the proper relationship between the legislature and the court is one of cooperation and assistance in examining and changing the common law to conform with the ever-changing demands of the community. There are, however, times when there exists a mutual state of inaction in which the court awaits action by the legislature and the legislature awaits guidance from the court. Such a stalemate is a manifest injustice to the public. When such a stalemate exists and the legislature has, for whatever reason, failed to act to remedy a gap in the common law that results in injustice, it is the imperative duty of the court to repair that injustice and reform the law to be responsive to the demands of society." *Alvis*, 85 Ill. 2d at 23, 421 N.E.2d at 896.

Illinois courts should declare that dramshop owners are potentially liable for common law negligence if they breach their duty of care to the public. Illinois should follow the national trend and abolish the common law rule which protects liquor vendors who illegally sell intoxicants to minors.

We should adopt the holding of the Wisconsin Supreme Court in *Sorensen v. Jarvis* (1984), 119 Wis. 2d 627, 350 N.W.2d 108. Wisconsin, although lacking a dramshop statute, has recently abrogated the common law rule of nonliability of liquor vendors when the purchaser is a minor. *Sorensen* held:

> "[A] vendor who negligently supplies intoxicating beverages to a minor and the intoxicants so furnished cause the minor to be intoxicated or cause the minor's driving ability to be impaired shall be liable to third persons in the proportion that the negligence in selling the beverage was a substantial factor in causing the accident or injuries as determined under the rules of comparative negligence." (*Sorensen*, 119 Wis. 2d at 646, 350 N.W.2d at 118.)

To establish a *prima facie* case of negligence, however, the plaintiff's allegations must establish (1) the existence of a duty of care owed by the defendant to the plaintiff, (2) a breach of that duty, and (3) injury to plaintiff (4) proximately resulting from the breach. *Curtis v. County of Cook* (1983), 98 Ill. 2d 158, 456 N.E.2d 116.

The existence of a duty is a question of law to be determined by the court. (*Curtis*, 98 Ill. 2d 158, 456 N.E.2d 116.) There should be a

duty of care owed by a liquor vendor to minors and the members of the public who are affected by their actions.

The Restatement (Second) of Torts provides that a duty of care and the corresponding standard of conduct can be adopted from a statute silent on the issue of civil liability. Section 286 of the Restatement states:

"The court may adopt as the standard of conduct of a reasonable man the requirements of a legislative enactment or an administrative regulation whose purpose is found to be exclusively or in part

(a) to protect a class of persons which includes the one whose interest is invaded, and

(b) to protect the particular interest which is invaded, and

(c) to protect that interest against the kind of harm which has resulted, and

(d) to protect that interest against the particular hazard from which the harm results.' Restatement (Second) of Torts §286, at 25 (1965).

Section 6—16(a) of the Liquor Control Act prohibits vendors from selling liquor to persons under 21 years old, intoxicated persons, or mental incompetents. (Ill. Rev. Stat., 1986 Supp., ch. 43, par. 131(a).) However, the Illinois courts have refused to use the liquor control laws to impose civil liability (*Cunningham*, 22 Ill. 2d 23, 174 N.E.2d 153; *Demchuk*, 92 Ill. 2d 1, 440 N.E.2d 112), even though the Liquor Control Act was enacted to protect the health, safety, and welfare of the people of the State of Illinois (Ill. Rev. Stat. 1985, ch. 43, par. 94).

This court in *Quinn v. Sigma Rho Chapter of Beta Theta Pi Fraternity* (1987), 155 Ill. App. 3d 231, 507 N.E.2d 1193, followed the Illinois Appellate Court precedent that has held the furnishing of intoxicating beverages to underage persons does not create a legal duty. But, the *Quinn* decision recognized "[t]he existence of a duty is not dependent on foreseeability alone but on other factors such as the likelihood of injury, the magnitude of the burden of guarding against it, and the consequences of placing the burden on the defendant." (*Quinn*, 155 Ill. App. 3d at 235, 507 N.E.2d at 1196.) Accordingly, we found the defendant fraternity owed a narrowly construed duty to the plaintiff and other initiates to conduct an initiation ceremony free from hazing and an unreasonable risk of harm.

In this case our prediction of the foreseeability and likelihood of injury resulting from sales of alcohol to minors is facilitated by the fatal accident statistics compiled by the Fatal Accident Reporting System of the Division of Traffic Safety, Illinois Department of Transpor-

tation (DOT). Of the 948 Illinois drivers killed in alcohol-related automobile accidents in 1986, 856 were tested and 370 had a blood-alcohol concentration (BAC) which met or exceeded the legal maximum of 0.10. (Ill. Rev. Stat., 1986 Supp., ch. 95½, par. 11—501(a)(1).) That same year, 166 drivers age 20 and younger were killed in Illinois fatal accidents. Over half of those minors had been drinking and 65 of them were legally drunk.

When the legal drinking age in Illinois was lowered in 1977 to 19 from 21, the DOT noted an increase in fatalities resulting from auto accidents involving young drivers. (J. Schroeder & E. Meyer, *Influence of Raising the Legal Minimum Drinking Age in Illinois* (Dec. 1983) (Illinois Department of Transportation, Division of Traffic Safety) (DOT Study).) In 1980 the legal drinking age was raised to 21 again and the DOT reported a significant decline in alcohol-related accidents involving drivers age 21 and younger. In the three years after the raised drinking age became effective, approximately 55 lives were saved and 2,750 nonfatal accidents were prevented. DOT Study at 1.

The sale of alcohol to a minor constitutes a threat to the health, safety and welfare of the Illinois citizenry. The statistical evidence sufficiently justifies the recognition that liquor vendors have a duty to refrain from making liquor sales to persons the statute exempts and who might endanger the public safety if they are served. This would conform the common law duty with that already imposed by statute. Whether the duty has been properly performed is of course a question that must be decided by the trier of fact. *Malorney v. B & L Motor Freight, Inc.* (1986), 146 Ill. App. 3d 265, 496 N.E.2d 1086.

The magnitude of placing such a burden on liquor vendors is slight. To fulfil their duty vendors must simply ask for proof of their customers' identification. There is not the insurmountable proof problem vendors allege exists when they are required to determine if the legal drinker is intoxicated. A vendor might not know when he is breaching a duty not to serve to intoxicated patrons, but he will surely recognize a minor if he makes the effort to determine the customer's age.

The common law rule of nonliability is embedded in the notion that the imbibing, not the selling, is the proximate cause of the injury to third persons. The consumer has been perceived as a superseding cause which breaks the causal relationship between the vendor's conduct and the plaintiff's injuries. The reasoning has been that the sale of liquor to a "strong and able-bodied man" does not constitute actionable negligence. *Cruse v. Aden* (1889), 127 Ill. 231, 234, 20 N.E. 73, 74; *Cunningham*, 22 Ill. 2d at 29-30, 174 N.E.2d at 157; *Demchuk*,

92 Ill. 2d at 5, 440 N.E.2d at 114.

In *Montgomery v. Orr* (N.Y. Sup. Ct. 1986), 130 Misc. 2d 807, 498 N.Y.S.2d 968, a New York court noted recent State and national studies which show a direct corollary between teenage drinking and the resulting number of motor vehicle accidents. Such information prompted the Federal government to direct the States to enact legislation to raise the legal drinking age to 21. The *Montgomery* court reasoned that a minor, by virtue of his or her immaturity, cannot be characterized as "able-bodied" using the archaic common law analysis. The fault rests with the supplier rather than the minor imbiber. The court pointed out it is easier to refuse service to a minor than it is to refuse service to an intoxicated adult because the basis of the decision rests on age rather than the condition of the party to be served.

The common law reasoning that a dramshop should not be held liable for selling liquor to a "strong and able-bodied man" is inapplicable to sales of alcohol to minors. The Illinois legislature has declared persons under the age of 21 lack the maturity to handle the effects of alcohol consumption. (Ill. Rev. Stat., 1986 Supp., ch. 43, par. 131(a).) It is ridiculous to argue the sale of liquor to one whom the law recognizes cannot handle it is not a possible cause of the harm the minor might incite on the streets. Illinois law recognizes it is negligent to entrust a minor with a dangerous instrumentality like a gun or a car. (*Pitts v. Basile* (1966), 35 Ill. 2d 49, 219 N.E.2d 472; *Heldt v. Brei* (1983), 118 Ill. App. 3d 798, 455 N.E.2d 842.) Alcohol is as dangerous a weapon in the hands of one the legislature has declared should not drink.

The Illinois Act was enacted in 1872 during a great waive of temperance reform. Initially the Act was interpreted as penal in nature (*Cruse*, 127 Ill. 231, 20 N.E. 73), but today most courts focus on the remedial nature of the Act and proclaim its purpose is to impose liability on those who provide the means of intoxication and profit from the sale of liquor to the public. (*Fabian v. Polish American Veterans Association of America* (1984), 126 Ill. App. 3d 80, 466 N.E.2d 1239.) One commentator noted the irony of a compensatory label since the $30,000 damage and $40,000 support caps in the Illinois Act deny full recovery to most injured parties. Comment, *Reconsidering the Illinois Dram Shop Act: A Plea For the Recognition of a Common Law Action In Contemporary Dram Shop Litigation*, 19 J. Marshall L. Rev. 49 (1985) (authored by Peter J. Wifler) (hereinafter cited as Comment, *Reconsidering the Illinois Dram Shop Act*).

This inequity has spurred a majority of the States to completely abrogate the common law rule of nonliability of liquor vendors. The

national trend began in 1959, when two decisions, *Waynick v. Chicago's Last Department Store* (7th Cir. 1959), 269 F.2d 322, *cert. denied* (1960), 362 U.S. 903, 4 L. Ed. 2d 554, 80 S. Ct. 611, and *Rappaport v. Nichols* (1959), 31 N.J. 188, 156 A.2d 1, held that a third party injured by an intoxicated person may bring a negligence action against the vendor who negligently sold the liquor. Both decisions rejected the defendants' contention that the sale or service of an alcoholic beverage could not, as a matter of law, be the proximate cause of injury to a third party. The *Rappaport* court said:

> "Where a tavern keeper sells alcoholic beverages to a person who is visibly intoxicated or to a person he knows or should know from the circumstances to be a minor, he ought to recognize and foresee the unreasonable risk of harm to others through action of the intoxicated person or the minor." (*Rappaport*, 31 N.J. at 201, 156 A.2d at 8.)

The court perceived the risk of harm is compounded in modern society where people often drive to and from taverns and automobile accidents are frequently the result.

Several of the State courts which have followed the *Waynick* and *Rappaport* decisions and have held liquor vendors liable for negligent sales, also have dramshop acts in one form or another. The Ohio Supreme Court stated in *Mason v. Roberts* (1973), 33 Ohio St. 2d 29, 32, 294 N.E.2d 884, 887, that "[i]t defeats the real purpose of the enactment of the [dramshop] statute to twist it into an immunity bath for all other cases."

The New York supreme court in *Berkeley v. Park* (N.Y. Sup. Ct. 1965), 47 Misc. 2d 381, 262 N.Y.S.2d 290, declared the New York act does not exclude the possibility of an action under common law negligence. The *Berkeley* court noted the New York dramshop act was originally enacted before the automobile had been invented, consequently, the threat of a drunk driver was not yet a reality. The New York appellate court declared the common law is not static. It must be "adapted to changing times and conditions of our civilization." *Berkeley*, 47 Misc. 2d at ____, 262 N.Y.S.2d at 293.

Like Illinois, New York has statutes which make it illegal to sell liquor to an intoxicated person or a minor. The *Berkeley* court found a dramshop owner has a legal duty to refrain from such sales because the statutes were created to protect the public. New York's philosophy is that third persons injured by an intoxicated person may sue the dramshop owner for negligence, even though the dramshop act also offers a remedy, because "[a]n injured party should not be restricted to a single remedy, if others are available." *Berkeley*, 47 Misc. 2d at

\_\_\_\_, 262 N.Y.S.2d at 294.

Vermont also has a fairly broad dramshop act (Vt. Stat. Ann. tit. 7, §501 (Supp. 1987)) and its supreme court has held the dramshop act does not contain any language foreclosing the possibility of a cause of action in negligence. (*Langle v. Kurkul* (1986), 146 Vt. 513, 510 A.2d 1301.) *Langle* specifically rejected the holding of the Illinois Supreme Court in *Cunningham* that the Illinois Dramshop Act preempts a remedy under the common law. A statute that gives a cause of action in strict liability is not inconsistent with a possible cause of action in negligence, according to Vermont's highest court. *Langle*, 146 Vt. at 516-17, 510 A.2d at 1303.

The dramshop act continues to be the exclusive remedy against Michigan licensees (see Mich. Comp. Laws §436.22(11) (Mich. Comp. Laws Ann. §436.22(11), at 118 (West Supp. 1988)); Mich. Stat. Ann. §18.993 (Callaghan 1985); *Longstreth v. Gensel* (1985), 423 Mich. 675, 377 N.W.2d 804), but it is significant Michigan law explicitly holds licensees liable for injuries caused by the illegal sale of liquor to minors and intoxicated persons. (See Mich. Comp. Laws §436.33 (Mich. Comp. Laws Ann. §436.33, at 153-54 (West Supp. 1988)); Mich. Stat. Ann. §18.1004 (Callaghan 1985).) In Michigan, bar owners must be bonded and both the bond principal and sureties are liable to persons injured as a result of the unlawful sale of alcohol. Intoxication must be the proximate cause of the injury or death and the cause of action to recover damages shall be an action in trespass on the case. (*Browder v. International Fidelity Insurance Co.* (1982), 413 Mich. 603, 613, 321 N.W.2d 668, 674.) The Michigan legislature constructed and designated a particular remedy that has been construed as a "complete and self-contained solution to a social problem not adequately addressed at common law." (*Browder*, 413 Mich. at 615, 321 N.W.2d at 675.) Unlike the Michigan lawmakers, our legislature has not designated section 6—21 as the exclusive remedy, either explicitly or by construction.

The Illinois Act is very broad. It provides a limited civil remedy for "[e]very person who is injured within this State *** by any intoxicated person." (Ill. Rev. Stat., 1986 Supp., ch. 43, par. 135.) New York and Vermont have similarly broad dramshop acts. Nonetheless, the courts in those States have abolished the common law rule of nonliability. We should not ignore precedent and discard the common law rule entirely. However, changing times warrant a corresponding exception to the rule as it applies to minors.

When the Third District Appellate Court was asked to create a limited and *sui generis* exception from the established law of Act ex-

clusivity in *Ruth v. Benvenutti* (1983), 114 Ill. App. 3d 404, 449 N.E.2d 209, the court adhered to the precedent of *Cunningham* and its progeny and refused, "[d]espite the temptation" (*Cunningham*, 114 Ill. App. 3d at 407, 449 N.E.2d at 211) to recognize a common law cause of action. The plaintiff urged the court to adopt a cause of action for the wilful and wanton conduct of a dramshop owner who knowingly served liquor to a minor who was subsequently injured in an auto accident. The court denied the request but sent the following message to our supreme court: "We suggest that the instant case is an excellent vehicle for a reexamination of the law, in the face of a lack of legislative action, should the Illinois Supreme Court so decide. We suggest careful scrutiny of any leave to appeal petition from our action in affirming." (*Ruth*, 114 Ill. App. 3d at 407, 449 N.E.2d at 211.) Unfortunately, leave to appeal was denied. *Ruth v. Benvenutti* (1983), 96 Ill. 2d 551.

We are asked to alter the common law in the face of supreme court and legislative inaction. "Because supreme court precedent in effect ties the hands of the appellate courts, a common law breakthrough might only be accomplished when some appellate court takes the radical move of recognizing a common law cause of action. Continued inaction by both the supreme court and legislature will eventually warrant appellate court action." Comment, *Reconsidering the Illinois Dram Shop Act*, at 51 n.15.

We should recognize a limited exception to the common law rule of nonliability of dramshops when alcohol is sold to a minor who consequently causes injury to a third person. Dramshop owners have a duty to abide by the laws of this State prohibiting the sale of alcohol to minors. If the duty is breached, the vendors should be liable in tort to third persons who are injured as a result of the minors' intoxication. I reject the archaic notion that the minor imbiber is the sole proximate cause of the injury, rather than the vendor. Because this State does not recognize that a minor is an able-bodied person who can legally consume alcohol, the sale to such a person constitutes actionable negligence.

Dramshop owners have a duty to refuse to hire employees who are known sellers of alcohol to minors. "It is well established that a cause of action exists against an employer for negligently hiring, or retaining in his employment, an employee he knew, or should have known, was unfit for the job so as to create a danger of harm to third persons." (*Bates v. Doria* (1986), 150 Ill. App. 3d 1025, 1030, 502 N.E.2d 454, 458.) The Restatement (Second) of Agency describes the cause of action as follows:

"A person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless:

\* \* \*

(b) in the employment of improper persons or instrumentalities in work involving risk of harm to others." Restatement (Second) of Agency § 213, at 458 (1958).

Illinois law clearly imposes a duty on employers to exercise due care when hiring employees. (*Easley v. Apollo Detective Agency, Inc.* (1979), 69 Ill. App. 3d 920, 387 N.E.2d 1241.) However, "[l]iability for negligent hiring arises only when a particular unfitness of an applicant creates a danger of harm to a third person." *Fallon v. Indian Trail School* (1986), 148 Ill. App. 3d 931, 935, 500 N.E.2d 101, 103-04.

The complaint alleges Charles, Sr., had been convicted of selling liquor to minors at an establishment which he operated prior to the time he worked at defendant's establishment. Defendant is in the business of selling liquor and Charles, Sr., was hired to sell liquor. Plaintiff argues Charles, Sr., had a reputation in the community for frequently selling alcohol to minors and being convicted for that activity. Plaintiff asserts defendant knew or should have known of Charles, Sr.'s, reputation. Because of his background, the hiring of Charles, Sr., created a risk of harm to third persons and may be negligence.

Defendant may be held liable for the negligent hiring of an employee it knew or should have known had sold liquor to minors on prior occasions. If Charles, Sr., had sold alcohol to minors in the past, it was foreseeable Charles, Sr., might violate section 6—16 again and again. (Ill. Rev. Stat., 1986 Supp., ch. 43, par. 131.) His employment in a tavern constituted a constant risk of harm to the public, a risk employers have a duty to avoid.

Questions of negligence, due care, and proximate cause are questions of fact to be determined by the fact finder. This case should be reversed and remanded so a cause of action for the negligent sale of liquor to a minor by a negligently hired tavern operator can be heard.